Good morning, Your Honors. My name is Jeffrey Renz from the University of Montana. Counsel, why don't you give us just a sec so everybody can get seated. I'm just going to introduce my students, sir. Okay. Okay, and it's my privilege and duty to introduce Taryn Clement, who's going to present the case today. Welcome, Ms. Clement. We're very pleased to have you here today. Thank you, Your Honor. May it please the Court, my name is Taryn Clement, and I represent John and Kate Mahoney and their son, B. Carlsbad Unified School District committed three procedural violations in this case. Improper IEP team composition, improper notice of who would attend, and pre-decisions about their son, B, without the parent's presence or the presence of a special education teacher or provider. Those violations caused a substantive denial of B's rights, caused a loss of educational opportunity, and denial of meaningful parental participation. I'd like to first talk about the error of not having Patricia Padgett at the IEP team. Patricia Padgett was B's only... Counsel, what authority do you rely upon for the concept that Ms. Padgett had to be on the IEP team? Your Honor, the IDEA section 1414 D1B prescribes that the IEP team must be composed of a group of individuals that includes not less than one special education teacher or, where appropriate, provider of such child. She was the only special education teacher or provider under B's current disability. At the time of the IEP meeting, Your Honor, there was only one disability in the room. It was a specific learning disability. B, in the past, three years prior, was diagnosed with a speech and language impairment. But Cynthia Schmitz, the speech and language pathologist... Yes, Your Honor. The ALJ made a finding that Patricia Padgett was providing designated instruction and services, which under the California Education Code is the same as related services under the IDEA. And the IDEA defines a FAPE, or a Free Appropriate Public Education, as special education and related services. So therefore, making those connections, Your Honor, she was providing special education to B. In fact, Patricia Padgett was contracted by Carlsbad for more than seven months prior to the IEP team meeting. She was providing services, and it's in the record that they were more than just speech and language. She was providing reading comprehension, writing, and math services. And they were specifically tailored, and she was the only one who was providing those services for B's specific learning disability. Let me ask you this, counsel. Let's assume for a moment that you're correct. But under our Napa Valley case, it's clear that you're not denied a FAPE unless there is some evidence that not having Ms. Padgett in the meeting resulted in a loss of educational opportunity or seriously infringed the parent's opportunity to participate in an IEP. How did that occur in this case? You're absolutely right, Your Honor. Not having Padgett at the meeting resulted in a loss of educational opportunity. In what way? Not having her there led to a shortfall of information. Patricia Padgett was the only person who could have said, in my experience with B, she was the only person who had the knowledge of his unique needs and could say what goals he could even attend and whether they were realistic and in what time frames. She was the only one who knew how B could better process oral and written directions. And she was the only one who could have said, under B's disability, he needs more or less transition time, he needs more or less special day class time, he needs a smaller or larger class size. She was the only one who could have said that and had experience teaching B at the time. And is there anything in the record that outlines what you've just indicated to the Court? Yes, Your Honor. Your Honor, I'd point your attention to, in the administrative record, page 696, Ms. Bass talks about the reading program support that she was providing. On the excerpts of record, page 84, Ms. Schmitz testified as to, he was going to Padgett's visualizing and verbalizing program, and that included reading comprehension, math, and writing. That talks about what services she provided, but is there anything in the record where any judicial officer or administrative officer was told basically the downside of her not being involved? Unfortunately, Your Honor, we don't have Patricia Padgett's testimony to say what she could have provided. We do have what she was providing to him, and we do know that the IEP then suffered as a result of not having those experiences. Intuitively, I understand, but I guess my point is, is there anything in the record was any court told, any administrative body told, if she's not involved in this, this is what's going to be lost here, this is how your client was harmed in some way? And yes, Your Honor, that was before the district court judge. It was specifically articulated as one of the problems with the IEP, and the judge framed the issue as one of the two issues, being that Patricia Padgett wasn't there. So it was argued before the district court judge in that respect. Okay, and your point is that Ms. Padgett was the only member of the IEP that had had any direct dealings with the applicant here? Yes, Your Honor, and I'm not a special education expert, and I'm sure the panel isn't as well. You're doing a good job, though. But we do know from the definitions under the IDEA that speech and language impairment versus specific learning disability are two completely separate categories. Give us the reference for that. Yes, Your Honor. Because I see the statutory provision on specific learning disabilities including language and speech disabilities. And I believe you're referring to, Your Honor, subsection 30 of 21C-1401. I'm there, I'm there. And it describes it as a sort of a basic psychological process that can manifest itself in the imperfect ability to think, speak, read, write, spell, or do mathematical calculations. And that is under specific learning disability subsection 30, right? Yes, Your Honor. So why wouldn't Schmitz's experience count as someone who had taught or worked with the student? Why would it not count as treatment for a specific learning disability under section 30? And, Mr. Oda, I would point you to the record where Cynthia Schmitz herself said that at the point of her assessment in September 2007, he didn't even qualify for speech and language as a speech and language impairment at that time. And, in fact, they only wrote in her services to err on the side of caution. And that's an excerpt of Record Pitch 62. And he barely qualified for speech and language services. Speech and language impairments we don't have a definition for, but in other areas of the code under the Head Start program, I don't mean to cite to that program, but it gives us a better understanding, it's a communication disorder, such as articulation or stuttering, as I did it. And in this case, under specific learning disability, it's a cognitive disorder, a basic psychological process. And Patricia Padgett was the only one who was providing those services tailored to his disability. She was doing much more than that. Under Napa Valley, though, we've interpreted the provision, particularly 1414D1B3i, that this provision does not require the participation of the child's current special education teacher. Do you agree with that? Why doesn't Napa take care of the concern here? Your Honor, this isn't an issue of currency. When there's more than one person that satisfies, yes, the district will have discretion. But here there was only one. And it was only Patricia Padgett because his disability had changed. And you're saying that the IDEA requires that the questions that you've raised be addressed by people who have dealt specifically with the student, is that correct? Yes, Your Honor. And is there any case law to substantiate that? In Amanda J., this court held that it has to be the person that's most familiar with the student. And this court has interpreted that to also mean it doesn't have to be the most current, but has to be somebody who actually taught the child in Napa Valley. I'm sorry. I'm going to go back to 1414. I want to make sure I understand exactly which provision you're talking about. 1414D1B. Yes, Your Honor. And what subsection? 3.0i talks about the requirement to have the special education teacher. Not less than one special education teacher. It doesn't say anything about being current. It just says it's got to be a special education teacher. It doesn't even say it has to be somebody who knows this particular child at this point. It just has to be somebody who knows something about special education and is a teacher. And, Your Honor, this court has interpreted that subsection of the IDEA to consistently mean someone who has actually taught the child. And what case is that? Familiar with the child. That is Napa Valley. I thought Napa Valley stood for just the opposite. I think Napa Valley stands for exactly the opposite. In Napa Valley, Your Honor, the court said the inquiry doesn't end at whether the teacher was current or not. It has to be someone who actually taught the child. But what page are you talking about on Napa Valley? And, Your Honor, it may take you just a moment to get there. Sure. Of course. And I'd be happy to point to the citation in rebuttal, if at all possible. I'm looking at page 939. The IDEA, we conclude that after the 1997 amendments, which affected our prior decision in Shapiro, the IDEA no longer requires the presence of the child's current regular education teacher on the IEP team. And, Your Honor, in paragraph 9, it states. Okay. I see where you are. You said we interpret the statute and regulation to require a special education teacher who has actually taught the student. It didn't say actually teaching the student, but somebody who's actually taught the student. Yes, Your Honor. And we go one step further and say it must have actually taught the student in his area of disability. It makes no sense. Okay. Whoa, whoa, whoa, whoa, whoa. Okay. But that was a really nice little bit of language, but you just added it to the statute on your own authority. No, Your Honor. It's based on Amanda Jay and Shapiro and Napa Valley. This Court's holding is that it must be the person who's most familiar with the unique needs of the child. I've never seen the most familiar phrase anyplace in these cases. Have you got a case? I believe it's Shapiro, Your Honor. Shapiro, of course, is the one that's been superseded by statute. So Shapiro is probably pretty weak authority for that provision because Congress amended the statute. And Shapiro was superseded on other grounds. By the statute. Right. And in Shapiro, the requirement for a special education or, I'm sorry, for a general education teacher, it talks about how it changed from the teacher to at least one teacher. And so that changed in the 1997 amendments. A special education teacher. Now, why wasn't Ms. Padgett a special education teacher? It didn't say special education teacher in the area of expertise. She was the special education teacher. She was the only special education teacher. There was no other. I'm sorry. I meant Ms. Schmitz. Why wasn't Ms. Schmitz? Why does Ms. Schmitz qualify as a special education teacher? And, Your Honor, I have to go back to she is a speech and language pathologist. And these categories had changed. At the time of the IEP, on February 20, 2008, there was only one disability in the area. And Carlsbad Unified School District was contracting with Mr. Padgett to provide special education services under his current disability, specific learning disability. And speech and language pathology was not even in the equation. Had Ms. Padgett been consulted before Carlsbad prepared the IEP? Your Honor, it's not in the record why Ms. Padgett wasn't at the meeting. You answered a different question than what I asked. I asked you if Ms. Padgett had had some involvement and had been consulted before the preparation of the IEP, not whether she was at the meeting. She had provided the IEP team or some members of that IEP team with a progress report. But a progress report is just that, Your Honor. It looks backward. And it looks at his current disabilities. It is not the same. It is not a substitute for a person standing in the meeting, being able to give feedback, and talk to the nine Carlsbad members. It sounds like, in response to Judge Bybee's question, it sounds like what you're asking us to do is to take the concept of the special education teacher and graft onto that a requirement that it be a special education teacher focused on the specific subcategory of disability that we're dealing with here. Is that correct? Well, Your Honor, I take issue with the subcategory language only because it's not a subcategory. The statute doesn't talk about what you're talking about. Do you agree with that? I agree with your statement, but you have to have a teacher that was familiar and it makes no sense that that person is the one that provides the speech and language. Well, you're talking about what makes sense. I'm asking for the construction of the statute, as was Judge Bybee. So I'm asking whether you're saying to us what we'd like you to do, Ninth Circuit, is to, in a new opinion, graft onto the statute that Congress passed and where it said nothing about what you're talking about, but to graft on this requirement. Is that what you're asking us to do? No, Your Honor. Based on this Court's prior rulings and the language of those rulings. Shapiro? Shapiro, Amanda J. Shapiro's been overturned by the statute. I'm sorry, Your Honor. Hadn't Shapiro been overturned by the statute? But there's other court cases, and that specific point from Shapiro has not been. Amanda J. says, An IEP addressing these unique needs cannot be developed if those people who are most familiar with the child's needs are not involved or fully informed. What we are asking the Court to do is follow that guidance that is promulgated. And not establish the ruling that the district can have somebody that satisfies the IDEA that has nothing to do with his disability. But you're asking us to make new law. No, Your Honor. I'm asking you to. But there's no case that you're pointing to that says that the statute means what you're saying. You're saying there was some pre-statutory language, pre-statutory amendment language that said what you're saying. There's some argument that those cases no longer have relevance here. You're saying you want us to construe the statute in the way you're talking about. Yes, Your Honor. Is that correct?  We are asking the Court to do so. Just try to be clear. Do you agree that Schmitz actually taught the student? Yes, Your Honor. Okay. Thank you. Schmitz taught the student in an area for which he is no longer at an area of disability that's no longer at issue. Like I said, there was one type of disability in the room at the time, and speech and language was not it. And I see I'm almost out of time, Your Honor. I'd like to reserve just a little bit of time for you all. Counsel, we've chewed up a lot of your time, and you've performed admirably. We will allow you some time on rebuttal. So let's hear from Carl Span. Good morning, Your Honor. My name is Jonathan Reed for the district. I'd like to start out by referencing a case that the Ninth Circuit has rendered. That's the Adams v. State of Oregon case. In that case, the Ninth Circuit stated that you analyze an IEP from the perspective of the IEP team at the time of the IEP. It's referred to, in short, as the snapshot rule. And in that case, the Ninth Circuit specifically warned against playing armchair quarterback regarding IEPs. The evidence in this case demonstrates that the determination of eligibility as specific learning disability occurred at the February 20th IEP meeting. Juanita Bass, who was a special education teacher at the student's home school, testified that on page 645 of the administrative record in which she testified that the February IEP was a continuation of the January IEP and that the team had not discussed eligibility until February. At that meeting, the parties had shared the district's assessment reports. If you look at the notes to the February IEP, the parent had discussed her concerns regarding listening comprehension and reading comprehension. Both of those areas can serve as the basis for eligibility, as Your Honor referenced, under specific learning disability because there needs to be a processing deficit that serves as the basis for that. That can be a visual processing deficit. It can be an auditory processing deficit. And it's within the auditory processing deficits that a speech and language pathologist assesses a student. So Ms. Schmidt was a perfectly appropriate person to be part of the IEP. The child did qualify prior as speech and language impaired. But even if the district went in with a student qualifying as specific learning disability, she would still be an appropriate person to testify as to the student's needs. And if you look at the IEP, the IEP team did, in fact, develop goals for following directions, which is an auditory processing skill, and organizing word groups, which is another auditory processing skill. A few terms that I would like to clarify, because there are a lot of acronyms in special education. In California, the term designated instruction and service is, in short, it's referred to as DIS service, is a service, is what in federal law we call a related service. And those are services that allow a child to benefit from special education specifically. The IDEA states specifically that speech and language can be both a related service and special education. And if you reference the IEP that the team developed in March of 2005, I believe the page number in the administrative record is 1504, you can see that Ms. Schmidt was providing services in the classroom. She was providing services in the therapy setting. She was providing consultative service to the staff. She was intricately involved in the student's education at that point. She was also a credentialed resource teacher, which was the other special education that the student was receiving at that point. She had provided services to the child. She had assessed him at that point. She had also assessed him in 2007 prior to the IEP team meetings at issue. So judging the IEP from the perspective of the IEP at the time of those IEPs, she was well-suited to be the special education provider providing those services. The second point I'd like to make is that even if you look past the individuals who participated in the IEP meeting, the question is whether Ms. Padgett, whether there's any evidence in the record that she was actually providing special education. The references in the record to which the student has cited indicate that she had never participated in an IEP regarding the student. And in fact, in her assessment report, she says specifically, both text and school materials are not being utilized in his sessions. So she was providing some sort of tutorial support, sometimes referred to as educational therapy, but never referred to as special education, which is defined as specially designed instruction to meet the unique needs of the child, including instruction conducting in the classroom, in the home, in the hospital, and other situations to allow a child to benefit from education. There's no evidence that she was supporting an educational program at that point, only that she was providing tutorial services. Counsel, how often does the IEP have to be conducted? At least annually. At least annually. Can it be conducted more frequently? Yes. At whose discretion? At either the district's discretion or the parent's discretion. If the parent requests a review of the IEP, the district must respond or it may respond? It must respond. The California Education Code requires it to convene within 30 days. If Ms. Mahoney was dissatisfied with the conduct of this IEP, in part because Ms. Padgett was not in attendance, could she have requested sort of a redo on the IEP? Yes. She could also have invited Ms. Padgett to the IEP meeting in either January or February of 2008. And was she aware in advance that Ms. Padgett was not likely to be there? Yes. She was provided notice of the IEP meeting, and her attorney was also at the January IEP. Following the conclusion of the IEP, who was B's special education teacher? He has never enrolled in the district. He never enrolled at Hope after that? No. Which goes to the question of even if you assume some procedural violation under Section 1415 of the IDEA, in order to effect a substantive denial of a free appropriate public education, which we call FAPE, the procedural defect either has to deny the child access to a FAPE, result in a loss of educational benefit, or severely impair the parent's opportunity to participate in the development of the IEP. She made clear at the IEP meeting that she had no intent of enrolling B in the district program, regardless of who was at the IEP meeting. In fact, she never even voiced a concern regarding the members of the IEP at the time of the IEP. So this is harmless error from the district's perspective no matter what? Only if you assume that a procedural violation occurred. Yeah, I understand that. But I mean, they've alleged several procedural violations, and you're saying that even if you assume that child didn't enroll, no harm, no foul.  As to the other two points, the student council cited three points of their contention. I believe those points are addressed in the briefing, and it's not necessary for me to go into them now unless Your Honor has specific questions. Okay. Thank you, counsel. You're welcome. Thank you. Ms. Lambert, we'll afford you another minute. The district's main arguments, Your Honor, is that Padgett didn't qualify and Schmitz was appropriate and satisfied. Padgett was used by the district in other students' IEPs. She was used by the district for B's IEP, and she was used by the district at other students' IEP meetings. Ms. Clement, can I just focus on the point that we just discussed with the other counsel? Let's assume hypothetically that there were one or more procedural violations in this case of the IDEA. Given the fact that B never enrolled in the district, why would any of these procedural violations be anything other than harmless error? Your Honor, the failure to properly compose an IEP team has been found since target range by this court to always deny a fake. And in this case, it had an inherently harmful impact on the IEP. They were lacking all of the information that a person who had worked with B for seven months prior on his current disability could have provided. As I said, the only person who could have said whether those goals and objectives that they came prior to the meeting with predecisions and read to Mrs. Mahoney, whether he could even meet those goals. But that would have also been true of Ms. Schmidt, except for you saying that there's a subcategory and only Ms. Padgett could deal with that. Is that correct? Yes, Your Honor. He had a specific learning disability category, and she was the only one who worked with him on that. Speech and language didn't work. It couldn't work. It wasn't, as Schmidt said, he didn't even qualify for speech and language impairment, barely qualified for speech and language services, and they only included him to err on the side of caution. In addition, Your Honor, earlier you asked about prior rulings by this court, and we do have SB v. Pomona. And in that case, it's not a reported case, but it was where this court was held to the Napa Valley standard, and they promulgated a rule that it must be one of the most significant components of his disability. And in this case, so in SB, that was an adapted physical education teacher. It worked for that student's disability. Here, speech and language is not even a component of these disabilities, let alone one of the most significant. And, Your Honor, my final point, it was the duty of the district to procure Padgett's attendance. It was not the mother. She was a required member. Why didn't she request a redo on the IEP if she was disqualified? Your Honor, the district filed this case and asked for a ruling that it was a free and appropriate public education. She didn't even have an opportunity. She was going to file a necessary education, but that's not here nor there. And, Your Honor, we respectfully ask in conclusion that this court reverse and enter judgment for the Mahonies so that B can move on with his education and start fresh with the new IEP. Thank you very much. Whatever happens in the case, I want to congratulate you for the fine job you've done. There are very few students that we see that are as well prepared as you and know the record as well. I'm sure opposing counsel would also agree with that. So we congratulate you for participation and your professor for helping to prepare you for this. You can rest assured that you did well. Whatever the outcome of the case, that usually has little to do with how well the lawyers do. But the reality is you're going to be a fine lawyer, and we congratulate you. Thank you, Your Honor. We thank counsel for the argument. Appreciate your participation in the pro bono program. Mahoney v. Carlsbad is submitted. And the final case on the oral argument calendar is Westwood, Apex v. Contreras.
judges: Dawson, Bybee, Smith M.